SALLY DORRELL *versus* LEMUEL JOHNSON *et al.*

After the expiration of a lease for a definite time the agent of the lessor went upon the leased premises, and cut down some trees by the direction of the lessor and for his use, the lessee remaining on the premises cutting wood and ploughing the land. It was *held*, that this was a sufficient resumption of possession on the part of the lessor to enable him to maintain trespass against the lessee for any injury to the soil ; and that a notice given to the lessee to surrender upon the expiration of the term, although not necessary in order to determine the lease, was good evidence to show the intent of the lessor in making such entry by his agent.

n the same case it was *held*, that a notice to quit given after the expiration of the term and the commencement of the process under the statute, by the lessor, in order to regain the possession, did not amount to an admission of the lawfulness of the lessee's possession and a waiver of the former notice and entry.

So of a bond given by the lessee to the lessor, upon the return day of the complaint under the statute, conditioned that the lessee should deliver up the possession.

Whether the case of a joint defendant in trespass shall be put severally to the jury, in order to enable him, if acquitted, to become a witness, is a question solely to the discretion of the judge presiding at the trial.

Two actions of trespass *quare clausum* were commenced on different days by the same plaintiff against the same defendant, the one, for taking away some manure, the other for cutting and carrying away some wood, both on the same premises, and were returnable before a justice of the peace on the same day ; and the damages in each action were laid at the sum of $20. It was *held*, that the plaintiff might recover costs in both actions, notwithstanding the provisions of *St.* 1784, *c.* 28, § 12. [Revised Stat. *c.* 121, § 15.]

THESE were actions of trespass *quare clausum*, the one, for taking and carrying away manure, and the other for cutting and carrying away wood, from the same land. The writs were dated, the one, on May 20, 1833, and the other on May 21, 1833, were returnable before a justice of the peace on June 8, 1833, and were served by the same officer at the same time. In each of the actions the sum of $20 was claimed as damages.

The pleadings were similar in both actions.

The defendants had leave to plead double, on their motion, before the justice ; and a similar motion was made before this Court, and allowed subject to the revision of the whole Court.

The defendant, Robert B. Johnson, pleaded a demise of the plaintiff to him for one year from April 1, 1832, and justified under it. The other defendants justified as his servants. The plaintiff replied by a new assignment of trespasses after the expiration of the demise. The defend-

ants pleaded severally, the general issue. Rcbert B. John son also pleaded to the new assignment, a demise from April 1, 1832 to April 1, 1833, and set forth a continued and peaceable occupation of the premises after April 1, 1833, to the date of the plaintiff's writ, by the plaintiff's agreement and consent ; and the other defendants, as before, justified as his servants. The plaintiff replied, that the demise was for one year and no more ; that on March 28, 1833, notice was given by the plaintiff, to the defendants to quit on the 3d of April then next ; that on the 4th of April, the plaintiff entered and became possessed of the premises ; and that the defendants committed the trespasses afterwards. Upon this replication issue was joined.

The two causes were tried together, before *Putnam* J.

*Shed*, a witness introduced by the plaintiff, testified that he was employed by the plaintiff as agent, to take care of the land when not leased ; that the defendants remained on the premises after the 3d of April ; that by the plaintiff's direction he cut some trees for her on the land, before the 28th of March, at which time he was seen by Robert B. Johnson ; that he likewise cut trees for her thereon after the 3d of April, and that when passing to the wood, he saw some of the defendants at a distance on the land, but did not know whether they saw him or not ; and that the defendants ploughed the ground after the 3d of April. It also appeared by other evidence, that some of the defendants had cut wood on the premises after that day.

It was further proved, that the plaintiff, on April 15, 1833, gave the defendant, Robert B. Johnson, notice to quit, and on the 29th of April commenced a process, under the statute, against the defendants, returnable on the 6th of May, for the purpose of regaining the possession ; that on that day, Robert B. Johnson, as principal, and another defendant, as surety, gave a bond to the plaintiff, in the penal sum of $100, conditioned, that the principal should deliver up to the plaintiff, the farm, excepting the house and barn, on the following morning, and the house and barn on or before the 20th of May, then next.

The witness, Shed, also testified, that he saw some of the defendants taking manure after the execution of this bond

The defendants' counsel moved that some of the defendants might be discharged, on the ground that there was not sufficient evidence against them, and to the end that they might be introduced as witnesses. But the motion was overruled.

The defendants contended, that the plaintiff did not become possessed by the entry of Shed as her agent, after the 3d of April, because the defendants continued in possession until after the date of the writ.

The defendants also contended, that both causes of action should have been joined in one action, and that accordingly only one bill of costs should be taxed.

It was agreed, that the cases should be taken from the jury, and that the defendants should be defaulted, with a reservation of the rights of the parties upon the questions of law, and that the Court should do what the law required in the premises. If, however, the evidence should be deemed sufficient to sustain a verdict for the plaintiff, the default was to stand, and the damages to be assessed by an assessor chosen by the parties.

*B. Russell,* for the defendants, cited to the point, that if Robert B. Johnson was a tenant at sufferance, the tenancy could not be terminated except by actual entry and ouster by the plaintiff, *Rising* v. *Stannard,* 17 Mass. R. 288 ; Co. Litt. 57 *b* ; 2 Bl. Comm. 150 ; that actual possession, on the part of the plaintiff, was necessary, to enable her to maintain trespass, *Rex* v. *Watson,* 5 East, 485 ; Bac. Abr. *Trespass, C* 3 ; 3 Bl. Comm. 210 ; 2 Roll. Abr. 553 ; 1 Chitty on Pl. (2d Am. ed.) 176, 178, 179 ; *Taylor* v. *Townsend,* 8 Mass. R. 411 ; that in order to render the entry available as an actual ouster, it must not only be open and peaceable, but it must be known to the other party and acquiesced in by him, 2 Bl. Comm. 150 ; 3 Bl. Comm. 174, 175 ; that the bond related back and constituted Robert B. Johnson a tenant for a stipulated time from the 3d of April, 2 Bl. Comm. 150, note ; that the plaintiff was entitled to only one bill of costs, as the actions might have been joined, *St.* 1784, *c.* 28, § 12 ; *Brewster* v. *Stewart,* 3 Wendell, 441.

*Farley,* for the plaintiff.

SHAW C. J. delivered the opinion of the Court. Though

VOL. XVII. 23

*Dorrell*
*v.*
*Johnson.*

*Jan 18th,*
*1836*

*April term*
*1836.*

Dorrell
v.
Johnson.

the record is voluminous and the pleadings complicated, the question presented by the present case is a plain one. The question is, whether the plaintiff, upon the facts appearing by the report, can maintain trespass *quare clausum fregit*. It appears, that the plaintiff had demised the estate for one year ending on April 1st, to one of the defendants under whom the other defendants justify. It seems very clear that when there is a demise for a fixed term, no notice to quit is necessary, on the part of the lessor ; the lessee is bound to quit and deliver up the premises, and if he continues to hold over, he is a wrongdoer. This is conceded by the defendants, but it is contended, that although a tenant thus holding over, by the laches of the lessor, is a wrongdoer, still he is a tenant at sufferance and not a trespasser. Taking this to be so, the case is brought to this question, whether enough is shown to have been done by the plaintiff, to revest the actual possession in herself, so that the tenant could not claim to hold by her sufferance and permission. It is a settled rule of law, that a landlord in such case has the right of possession and a right of entry, and when he has entered, he has the actual possession and may maintain trespass, either against the former tenant or any other person. *Taunton* v. *Costar*, 7 T. R. 431 ; *Keay* v. *Goodwin*, 16 Mass. R. 1 ; *Turner* v. *Meymott*, 1 Bingh. 158 ; *S. C.* 7 Moore, 574.

But it is contended that here it is not shown that the plaintiff did any act which can be construed to be a legal entry to divest the possession of the defendants, and reinstate herself in the actual possession. But where a party is wrongfully holding possession of land, and the party having the right enters, either declaring his purpose to be, to regain possession, or doing acts of ownership, expressive of his intent to hold as owner, this is sufficient. In a late case it was held by Lord *Tenterden*, that it is not necessary that the party entering should declare that he enters to take possession ; it is sufficient if he does any act to show his intention. In that case his servants ploughed the land, from which it was manifest that he intended to take possession. *Butcher* v. *Butcher*, 7 Barn. & Cressw. 399.

In the present case it is shown by a witness who was the

Dorrell
*v.*
Johnson.

agent of the plaintiff, that he went on the land and cut trees for the plaintiff, after the expiration of the term. We think this is sufficient to show that the plaintiff regained the lawful possession of the estate, and was well entitled to maintain trespass, for any injury to the soil. And though it is contended that it was not quiet and peaceable and exclusive possession, it is a sufficient answer, that it was lawful and rightful, and that of the defendants was wrongful. They could not after such entry be deemed tenants at sufferance. And although the notice given by the plaintiff on the 28th of March, requiring the tenant to surrender the estate on the 3d of April, was not necessary to determine the lease and give the plaintiff a right of entry, yet it is good evidence, to show the intent and purpose of the plaintiff, in her actual entry by her agent after the 3d of April.

Then it is contended, that the subsequent notice to quit given on the 15th of April, and the proceedings upon the landlord and tenant act, admitted the defendants' possession, and amounted to a waiver of the former notice and entry. But we think this position cannot be supported. A party may admit the actual possession of another for the sake of a remedy, without admitting it to be lawful. It is not like the acceptance of rent for the land, after the time fixed by notice to quit, which admits that the party held as tenant, and may amount to a tacit waiver of such notice. And the same argument applies to the bond ; it does not amount to an admission that the defendant held lawfully, but was resorted to, as a means of getting speedy possession, and as a substitute for the legal process which had been commenced for the same purpose. It did not in terms, or by implication, admit the rightful possession of the defendants.

Whether the case of one or more joint defendants in trespass, against whom it is alleged there is no evidence or very slight evidence, shall be put severally to the jury, to enable them, if acquitted, to be witnesses, is a question solely to the discretion of the judge at nisi prius, to be decided upon his view of the strength of the evidence, and the probability that such defendants have been included to prevent them from being called as witnesses for other defendants.

Porrell
v.
Johnson.

We have not considered the objection to the pleadings before the justice, because, whatever the ground of that objection was, we think it was waived by the subsequent proceedings.

It is contended that, by force of the statute, the plaintiff is entitled to one bill of costs only, in these actions, because they might have been joined in one. *St.* 1784, *c.* 28, § 12. It is objected that this statute applies only to actions upon contract. Without considering this objection, which is certainly open to great doubt, we think the ground taken by the defendants cannot be maintained, because these actions could not have been joined, inasmuch as they are for distinct trespasses, and in each of them $20 dollars damages were claimed, and if united, the justice's court would have had no jurisdiction.

The defaults were entered in this case, subject to the opinion of the Court upon the sufficiency of the evidence to support the actions for the plaintiff. We have not examined this evidence very particularly, but we consider that there is evidence to show an entry on the lands at different times by all the defendants, and cutting the wood and hauling off the manure, as stated. The taking off the manure after the determination of the lease, and entry of the plaintiff, is *primâ facie* an act of trespass, and if the defendant would have relied on a right to take the manure, by agreement, usage, or otherwise, he should have shown it.

. So far as the damage is concerned, this question is still open, before the assessor agreed upon by the parties, to assess the damages.