RAFAEL LUIS VIDAL LASSISE, peticionario, *v.* LA CORTE DE DISTRITO DE MAYAGÜEZ, HON. ÁNGEL FIOL NEGRÓN, JUEZ, demandada.

Núm. 25.—*Sometido:* Junio 1, 1950. *Resuelto:* Junio 19, 1950.

*Oscar Souffront,* abogado del peticionario.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

El aquí peticionario radicó ante la Corte Municipal de Mayagüez demanda de desahucio contra Luis Enrique Santaliz. Las alegaciones esenciales de su demanda fueron que desde el día 24 de septiembre de 1948 era dueño de una casa, que describe; que en unión a su familia el demandado ocupaba esa casa en calidad de arrendatario desde hacía más de cinco años, mediante contrato verbal de mes a mes celebrado con el anterior dueño, por canon de $25 mensuales; que en 30 de septiembre él notificó al demandado por carta certificada y con sello de entrega inmediata que necesitaba de buena fe recobrar la posesión de la casa, con el fin de retirarla del

mercado de alquileres y ocuparla como su residencia y la de su familia, por lo que éste debía desalojarla y dejarla libre y expedita a la disposición del demandante dentro del término de sesenta días; que no habiéndolo hecho así el demandado, él radicó demanda de desahucio en 7 de diciembre de 1948, pero que por no haber vencido el término de seis meses exigido por la ley insular, contado a partir de la notificación, la demanda fué declarada sin lugar; que una vez vencido dicho término solicitó una vez más de la Oficina Federal de Inquilinato permiso para radicar nueva demanda de desahucio contra el demandado, concediéndosele dicho permiso no obstante la oposición de éste; y que a pesar de haber expirado el referido término de seis meses el demandado no ha desalojado la propiedad.

Luego de una contestación en que se negaban todos los hechos alegados en la demanda·y se planteaban las defensas especiales de que (a) el demandante no ha cumplido con los requisitos de notificación aplicables a acciones de esta naturaleza; de que (b) la demanda no aduce hechos constitutivos de causa de acción; y de que (c) la corte carece de jurisdicción para entender en el caso, el mismo fué visto por la corte municipal, dictando ésta sentencia declarando con lugar la demanda. Apelada la sentencia así dictada para ante la Corte de Distrito de Mayagüez, donde con autorización de la corte se radicó una demanda enmendada, y después de presentarse una estipulación de hechos y de plantearse ciertas cuestiones de derecho, fué el pleito a juicio. Tan sólo el demandante adujo prueba. La corte de distrito, citando, entre otros, el caso de *Vélez* v. *San Miguel*, 68 D.P.R. 575, llegó a la conclusión de que no existía contrato de arrendamiento entre el demandante y el demandado toda vez que, según ella, "en ausencia de un convenio expreso o implícito al efecto, . . . el hecho de que el demandante recibiese del demandado pago por el uso y ocupación de la propiedad después de aquél adquirirla no crea de por sí un nuevo contrato de arrendamiento ni implica la continuación del anterior existente.

. . . ." (¹) ; de que siendo el demandado un detentador de la propiedad la acción de desahucio no debió haberse entablado en la corte municipal; y de que careciendo ésta de jurisdicción para conocer en primera instancia del caso, también carecía ella de jurisdicción para conocer del mismo en apelación. Solicitada reconsideración, la misma fué declarada sin lugar. A instancias del demandante expedimos un auto de *certiorari*.

En *Vélez* v. *San Miguel,* supra, el demandante adquirió en 14 de septiembre de 1946 una casa con intenciones de vivirla. En primero de octubre del mismo año obtuvo de la OPA un certificado, requerido entonces por la ley y los reglamentos federales, autorizándole a instituir de conformidad con la ley local, no antes del 23 de enero de 1947, un procedimiento de desahucio contra el demandado, inquilino del anterior dueño, y notificó a éste de la necesidad que tenía de ocupar la casa por él adquirida y que debía desalojarla. En 24 de marzo de 1947 radicó ante la corte de distrito acción de desahucio y ésta declaró con lugar la demanda. Sostuvo el demandado que como el adquirente había recibido de él los cánones correspondientes a los meses de octubre y noviembre, y siendo dichos cánones computados por anualidad inferiores' a la suma total de $1,000, (²) la jurisdicción correspondía a la corte municipal y no a la de distrito. Este Tribunal resolvió por mayoría (³) que al determinarse si las partes celebraron un nuevo contrato, debía recordarse que en virtud de la ley federal el demandante no podía por varios meses lanzar

---

(¹) La prueba demostró que el peticionario había venido recibiendo del demandado la cantidad de $25 mensuales desde que adquirió la propiedad.

(²) Véase el artículo 622 del Código de Enjuiciamiento Civil, edición 1933, que dispone que "Tendrán jurisdicción para conocer de las demandas sobre desahucio, los jueces municipales del distrito en que radique la finca, cuando el canon de los arrendamientos o el precio o cantidad que, por virtud de cualquier contrato, deba pagarse, computado por una anualidad, no exceda de mil dólares. En todos los demás casos conocerán de dichas demandas las cortes de distrito en que la finca radique; . . . ."

(³) Disintieron el Juez Asociado Sr. Todd, Jr. y el infrascrito.

al demandado y que durante dicho período él tenía derecho a que el demandado lo compensara por el uso de la propiedad; que no había razón en derecho o en lógica que le obligara a resolver que el cobro de esta deuda, que se admite se debía, tenía que suspenderse hasta después que se lanzara al demandado, época para la cual su cobro podría ser bastante incierto; y que si el demandante no hubiera dado ninguno de los pasos indicados y se hubiese limitado a aceptar del demandado dinero que ambas partes calificaron de alquiler, entonces sí que hubiera surgido un nuevo contrato entre ellos; y se llegó a la conclusión de que "la aceptación de dinero por el uso de propiedad inmueble no crea por sí sólo un nuevo contrato de arrendamiento entre el comprador de una casa y el inquilino del dueño anterior cuando todas las otras circunstancias nos llevan a un resultado contrario."

En el presente caso, como se ha indicado, el demandante adquirió la propiedad en 24 de septiembre de 1948 y seis días más tarde notificó al inquilino del anterior dueño que debía desalojarla, ya que de buena fe necesitaba la casa para vivirla en unión a su familia. Le concedió con tal fin un término de sesenta días a partir de la fecha de la carta enviádale. No habiendo el demandado desalojado la propiedad, el demandante radicó demanda de desahucio en su contra en 7 de diciembre de 1948, siendo la misma declarada sin lugar por no haber vencido el término de seis meses fijado por la Ley de Alquileres Razonables.(4) Vencidos los seis meses el demandante, considerando que era su deber dar cumplimiento a lo dispuesto por la ley y los reglamentos federales(5) solicitó un nuevo permiso de la Oficina Federal de Inquilinato en San Juan. Ese permiso le fué concedido, a

(4) Núm. 464 de 25 de abril de 1946 ((1) pág. 1327) conocida por Ley de Alquileres Razonables.

(5) No estamos resolviendo en este caso en forma alguna si para la época en que tuvieron lugar los hechos aquí envueltos era necesario obtener de la Oficina Federal de Inquilinato en San Juan un certificado con tal fin antes de poder instar pleito de desahucio.

pesar de la oposición del demandado,(6) y le autorizó a radi-car demanda en cualquier fecha posterior al 29 de julio de 1949. Así las cosas, en 18 de agosto de 1949 acudió ante la Corte Municipal de Mayagüez con la demanda que en la actualidad es objeto del presente recurso.

Arguye ahora el peticionario que el presente caso es distinguible del de *Vélez* v. *San Miguel*, supra, toda vez que con posterioridad al mismo el artículo 12 de la Ley 464 de 1946, supra, fué enmendado por la núm. 201 de 14 de mayo de 1948 (págs. 575, 579), la que a la vez adicionó el artículo 12-A que no existía en la ley original.

El artículo 12, según ha sido enmendado, provee que:

"*Sea cual fuere la fecha de su* edificación u *ocupación y tanto en las viviendas* como en los locales de negocio, *aunque cambie el dueño* o el titular arrendador, *llegado el día del vencimiento pactado en el contrato de arrendamiento, éste se prorrogará obligatoriamente para el arrendador y potestativamente para el inquilino o arrendatario,* sin alteración de ninguna de sus cláusulas, todas las cuales se reputarán vigentes. Lo anterior es aplicable tanto a contratos escritos como a convenios orales y la prórroga se entenderá por los plazos que fija el artículo 1471 del Código Civil,(7) pero nunca por un período mayor que la duración de la emergencia declarada en esta Ley. . . ." (Bastardillas nuestras.)

Y el artículo 12-A, en lo pertinente, dispone que:

"Como excepciones a lo dispuesto en el artículo precedente, *el arrendador podrá negar la prórroga del contrato de arrendamiento* y en su consecuencia promover la acción de desahucio solamente en los casos siguientes:

"

---

(6) Al notificar originalmente al demandado que debía desalojar la propiedad, el demandante también había obtenido un certificado del Acelerador de Viviendas en Puerto Rico. Fué fundado en el mismo que radicó su demanda de 7 de diciembre de 1948, declarada sin lugar por prematura.

(7) El artículo 1471 del Código Civil, edición 1930, reza así:

"Si no se hubiese fijado plazo al arrendamiento se entiende hecho por años cuando se ha fijado un alquiler anual, por meses cuando es mensual, por días cuando es diario."

"*6. Por necesitar de buena fe la vivienda,* o parte de ella *para su uso personal* y ocupación inmediata *como sitio de residencia.*

"*.*

"*b. El arrendador notificará por escrito de modo fehaciente al arrendatario* afectado la necesidad en que se halla de habitar la vivienda y le requerirá para que desaloje la misma, todo ello *con seis meses de antelación, por lo menos a la fecha en que desea ocupar la vivienda. El arrendador no podrá presentar la demanda de desahucio hasta después de transcurridos dichos seis (6) meses.*" (Bastardillas nuestras.)

Según se ha visto, a tenor de lo dispuesto por el artículo 12 de la ley, tal cual ha sido enmendado, cuando una propiedad arrendada es adquirida por otra persona, el contrato de arrendamiento se prorrogará obligatoriamente para el nuevo dueño y potestativamente para el inquilino. Sin embargo, a tenor de lo provisto por el artículo 12-A de la misma ley, como excepción a lo antes dispuesto, el arrendador podrá negar la prórroga del contrato de arrendamiento, entre otros motivos, por necesitar de buena fe la vivienda, o parte de ella, para su uso personal y ocupación inmediata como sitio de residencia. Empero, antes de poder entablar su demanda deberá notificar por escrito de modo fehaciente al arrendatario afectado de la necesidad en que se halla de habitar la vivienda y le requerirá para que desaloje la misma, todo ello con seis meses de antelación, por lo menos, a la fecha en que desee ocupar la vivienda, no pudiendo presentar su demanda de desahucio hasta después de transcurridos dichos seis meses.

▇▇▇ Cuando seis días después de adquirir la propiedad el demandante notificó al demandado que la desalojara, su actuación claramente equivalió a la negación de la prórroga del contrato de arrendamiento y a la terminación del mismo. Cierto es que no entabló su demanda de desahucio, como ya se ha dicho, hasta el 18 de agosto de 1949, o sea, hasta diez meses dieciocho días después de haber requerido el demandado que desalojara la casa, y que durante todo ese tiempo aceptó del demandado la suma mensual de $25, que era el

canon que el demandado había venido pagando al anterior dueño. Pero la aceptación de ese dinero no pudo equivaler, ni equivalió, en forma alguna a la concertación de un contrato de arrendamiento entre el demandante y el demandado. Aquél ya había negado la prórroga del contrato de arrendamiento anterior y terminado el mismo por actos expresos y explícitos. La demora en entablar su acción es claramente explicable: durante los primeros seis meses inmediatamente siguientes a la notificación que hizo al demandado, por ministerio de la ley insular no podía acudir con una demanda de desahucio a los tribunales; y una vez vencidos los seis meses creyó que era su deber obtener el certificado a que ya hemos aludido del Acelerador de Viviendas Federal. Radicó su demanda veinte días después de vencido el límite fijádole en dicho certificado. Su proceder en todo momento demostró que su propósito siempre fué dar por terminado el contrato de arrendamiento. Las cantidades por él recibidas lo fueron, por ende, en retribución al uso de su finca y no en concepto de cánones de arrendamiento. No obstante pagar cierta cantidad mensual por el uso de la propiedad que ocupaba, el demandado resultaba ser un detentador de la misma. Siendo ello así, la corte municipal no tuvo jurisdicción para conocer del recurso y no teniéndola tampoco la tuvo la de distrito en apelación.(8)

*Debe anularse el auto expedido.*(9)

Opinión disidente emitida por el Juez Asociado Señor Todd, Jr.

Disiento. Las circunstancias concurrentes en el presente caso me convencen con mayor fuerza que el de *Vélez* v. *San Miguel*, 68 D.P.R. 575, fué mal resuelto. En aquél se aceptaron los cánones de arrendamiento por sólo dos meses. En el presente se aceptaron durante diez meses—cuatro meses

---

(8) Véase la nota 2.

(9) Aunque el ponente en este caso disintió en el de *Vélez* v. *San Miguel*, supra, un nuevo estudio de la cuestión le ha convencido de que bajo las circunstancias allí concurrentes su disentimiento no estuvo justificado.

más de los seis requeridos por el artículo 12-A(*b*) de la Ley de Alquileres Razonables. Sin embargo, se afirma que no hubo una prórroga del contrato de arrendamiento. Bajo este razonamiento si un demandante continúa percibiendo los cánones de arrendamiento durante un año o dos, después de expirados los seis meses, y expone razones que se consideran "claramente explicables" para la demora, sean o no razones legales siempre que el demandante creyera que cumplía con su deber, presumo que también se resolverá que no hubo prórroga del arrendamiento. No puedo aceptar conclusiones que están reñidas con los hechos probados y me ratifico en mi opinión disidente en el caso de *Vélez* v. *San Miguel*, supra. No puedo aún comprender cómo una persona que paga por el arrendamiento o por el uso de una propiedad pueda al mismo tiempo ser considerada un detentador de la misma.